Dr. Andrew Craig May it please the court. My name is Andrew Cuddy, attorney for the appellants. I think this case boils down to something that is more simple than the briefing even allows you to believe. This is a student with myriad symptoms of disability. The parent referred the student to the IEP team, the Individualized Education Planning team, in order to have him classified as a student with a disability and receive appropriate services. The district took it upon itself, as they should, to evaluate the student and narrowly evaluated him largely in the area of autism, which was an area of suspected disability. The regulations, the IDEA, requires that they evaluate the student in all areas of suspected disability. Once the district had completed its evaluation, they ruled out him being a student with autism. But they failed to continue their evaluation process and determine what was the basis of the symptomology that was evident. And they failed to further evaluate him to determine whether or not he might meet some disability diagnosis that would fit in either the classification of emotional disturbance or the classification of other health impairment. This court has an important obligation today to send a message to school districts that they must comply with the law and evaluate students in all areas of suspected disability so that their needs can be met, so that we can avoid the tragic consequences that occur when a child does not get the services he needs. The district was on notice of these disability symptoms. When the parent enrolled the student in the district, she provided a psychological report that she had paid for at her own expense that indicated that he had multiple diagnoses. Diagnosis of separation anxiety, diagnosis of a general anxiety disorder, and other specific neurodevelopmental disorders that were symptoms of an autism spectrum disorder. Where was the evidence of emotional disturbance? That is a good point, Your Honor, because the evidence of emotional disturbance is something that must flow from the district's evaluation. And the district had a burden to evaluate the student in all areas of suspected disability. And failing that, evidence would not be present. However, in this case, there was other evidence. Your position is that if a parent or an evaluation raises one possible area that would merit an FIE, they've got to investigate all of them that might fall under the statute. They have to investigate all suspected areas of disability. Where was the suspicion of emotional disturbance at the time that the suspected autism was raised? The suspicion is evident by the child's behaviors. The child demonstrated this anxiety, the separation anxiety, the school avoidance, the symptom somatization issues that he was having in school, the restraints that they imposed on him. All of these things were evidence of something going on. But I thought you said that something was autism, was it not? That was the parent's initial suspicion. That was the initial Dr. Saunders' suspicion, which is the report the parent turned over when she enrolled the student. But then the burden shifts to the district. The district has to design the evaluations to evaluate the student in all areas of suspected disability. Where was the suspected disability of this other health impairment at the time the autism was raised? Your Honor, in the IDEA, there's 14 classifications. So, for example, the other health impairment might encompass a lot of different diagnoses that might be under the DSM where there are thousands of diagnoses. Well, that's kind of what I'm getting at, Counselor. I mean, it sounds to me like you're saying the school district is obliged to go on an expedition to identify any possible disability, disorder, anything that falls under those buckets, so to speak, in the statute, when one has been raised as a suspected disability. One was raised by the parent, who is a layperson, who goes to a group of professionals, multidisciplinary team, that has an obligation to comprehensively evaluate that student in all areas of suspected disability. They can't narrow their scope of evaluation so that they can deprive the student of what he needs, which is what happened here. How do we define a suspected disability? A suspected disability is something that is interfering with a student's ability to participate in his educational environment and investigating the reason behind that so that we can determine whether or not it is a disability or if there's some other factor that is causing it. Where is your case or support for that definition of suspected disability in the statute? Honestly, Your Honor, I'm not sure if suspected disability is defined in the statute. But that's the term that's used, correct? Yes. Suspected disability. Yes. Well, you just gave me a definition for it. Where's your support for that definition? Your Honor, honestly, I believe there's not sufficient case law on this issue because this issue itself of the evaluation is a $2,000 to $3,000 issue that we're arguing about today. It's largely common sense. It's very unusual for a school district to take this action against a parent to deprive them of the IEE. I think it's generally recognized in the special education arena after Schaefer v. Wiest pointed out the significance of the parent having an IEE. The districts generally grant these. So there is not a case law on it. Perhaps this will be the one. But if the student is exhibiting symptoms of something that may be a disability, they are obligated to investigate and find out what the cause is so that this child's needs can be met. It may not be an educational disability that they find out. They might find out this is all some sort of environmental thing linked to the family. But that, too, if it's interfering with his educational ability to participate, would need to be addressed, identified, and then addressed with some sort of plan, even if it was outside the context of the IDEA. For me, this case is based on the professional decisions of the different teams of individuals that this school district uses under the idea, under this particular statute. They examine them with a focus on autism. Whatever else you would think that would be noticed in that focus would also be dealt with. You then have the next step in the process, a different special education team that gets involved. At some stage, it seems to me, the premise for your position is that the mother mentioned autism, all that anybody ever looked at autism was autism. There's more involved here. But it seems to me that's a factual question. There's some experts taking a look at the child's situation, a fair amount of disagreement among the experts as one group with the mother as to whether there is separation anxiety, whether there are other difficulties that the child is having. It seems to me there was a significant effort on the part of the school to get to the bottom of any problems that this child might have. You're identifying some additional things they should have looked at. And I guess I'm wondering, maybe more of a question for your friend on the other side, how do we know how much that was actually looked at? How much was autism really the limit of what was examined? But I guess on the face of it, what you need to convince me, counsel, is that this really was unfairly limited, not that emotional disturbance needed to be looked at as some sort of broad category or something else, but that there were limitations improperly placed on these experts as to what they examined for. Your Honor. How do we know those limitations existed? As opposed to just looking at the child, dealing with the child, and trying to figure out what, if anything, is wrong, as opposed to saying if it ain't autism, we're not going to worry about it. In the context of the use of the term expert here, Your Honor, the parent did present expert witness at the hearing. What the district presented was their staff members. They presented party testimony about the issues, their staff members. Right. I don't understand what word you used. A party to the proceeding, in a sense. And the parent relied on the IDEA language for obtaining an independent expert. Not only was it Dr. Sanders providing some information to the district before the kid enrolled, but also afterwards, Dr. Morrison, also an independent evaluator, a diagnosis student with multiple disabilities. And the failure of a district to comprehensively evaluate the student in all areas of suspected disability leave those needs unfulfilled and result in tragic consequences, as they did for this student and this family. And this limited evaluation deprived the student of the IEP that he so desperately needed and therefore deprived him of a free and appropriate public education. I will reserve my time unless you have further questions. Well, you have the five minutes. You don't get the additional four as well. Unless you have questions, I'm done on my initial presentation. Okay. As you wish. Thank you. Thank you. Meredith Walker. Good afternoon. My name is Meredith Walker, and I'm here on behalf of Appley Northwest Independent School District. The district court and the magistrate judge both correctly affirmed the special education hearing officer's decision in this matter in favor of Northwest ISD's full and individual evaluation. Before turning to the crux of the issue before the court, I believe it's important for the court to have a good understanding of the relevant procedural background here, and that is that Northwest ISD absolutely filed this due process hearing in this matter, and it did so in response to the student's request for an independent educational evaluation. And so the sole issue before the special education hearing officer and the sole issue before the district court was whether the full and independent educational evaluation was appropriate. So when opposing counsel discusses that there were tragic consequences that need to be addressed and he starts talking about eligibility, those are not issues before the court today. The parent was given her procedural safeguards on August 28, 2018, on September 16, 2018, and on November 30, 2018, and that's in the record on appeal at 893 through 895. If the parent had a concern about eligibility or any of the other alleged violations of IDEA that are raised in the student's briefing to the court, it was incumbent upon the parent. In fact, the parent had the information necessary to file a due process hearing. They did not do so. So that goes back to the issue before this court today is whether the full and individual evaluation is appropriate. What is the issue before the SEHO? Fairness to your friend on the other side, it does seem to me a very serious concern by the parents that not enough was examined when the FIE was developed or the result was the FIE. What came out at the hearing to satisfy that a full and independent individual examination of this child's potential needs, suspected disabilities, were looked at as opposed to someone identified autism, we didn't find autism, game over? Absolutely. When you look at the record on appeal, the evaluation in question is at 807 through 853. It looked at the student's speech and language and communication. It reviewed his motor abilities. It looked at emotional and behavioral concerns, and I'm going to come back to that in a second. It also addressed autism and also assessed the student's processing and cognitive abilities, his adaptive behavior, and his academic achievement. And specifically going to Judge Wilson's question for opposing counsel regarding what exactly was assessed or what was reviewed in the full and individual evaluation, when you look at the BASC-3, which stands for Behavior Assessment Scale for Children, and that's specifically at 821 through 824, the BASC-3 looks at hyperactivity. What are those pages from? It's from the record on appeal, 821 through 824. What is the document? It's the full and individual evaluation. The FIE itself? The FIE itself. So when you look at the BASC-3, it looks at hyperactivity, aggression, anxiety, depression, somatization, attention problems, atypicality, withdrawal, adaptability, social skills, anger control, emotional self-control, executive functioning, and negative emotionality. It absolutely assessed his emotional concerns that were raised. And those are things that are being assessed? Absolutely. There's a BASC-3. It's a scale that's given to the parents and the teacher. The licensed specialist in school psychology looks at it to determine whether there are concerns in the school setting reflecting that. What shows up in the FIE, and perhaps it's only what you just said, is that the answer to the concern that a court might have that the FIE was too limited in what it was examining? Absolutely. Too limited by this possibility of autism? Absolutely, because it was not limited by autism. The school district absolutely— About the issue of emotional disturbance. A fair number of things that you just identified are emotional-related problems and how they can manifest themselves. Emotional disturbance is a very broad category, but at least that is getting to those questions would be your position? That's exactly right, Your Honor. That is exactly what those are looking to address. The example we gave in our briefing, and I think it helps kind of hone in on this issue, is the IDEA does set forth eligibility categories. One of those eligibility categories is emotional disturbance. There is not an assessment that assesses for an emotional disturbance because an emotional disturbance is not a disability. It's an eligibility category. Other disabilities recognized by the DSM-5 are going to fall under emotional disturbance, such as anxiety.  The school district assessed for anxiety using the BASC-3 and in the emotional and behavioral component, and they determined that in the school setting, he was not manifesting anxiety such that there was a need for specially designed instruction. Does that answer the questions? I know you're waiting for my response. Yes, that answers my question. Perfect. So going back to the evaluation, as I noted, it absolutely assessed for all areas of suspected disability. They determined that... Counsel, let me interrupt you there and ask the question I asked counsel opposite. What is a suspected disability? So the IDEA does not define suspected disability. What the IDEA says is that the Admission Review and Dismissal Committee, or the IEP team, depending on what state you're in, has to look to determine whether a child is a child with a disability under section 300.8 of the federal regulations. And then 300.8 is going to set forth those eligibility categories, which include intellectual disability, hearing impairment, speech or language impairment, visual impairment. So there is no definition for a suspected disability. And I have not been able to find any case law out there that reflects what a suspected disability is. Is it the same as those, I will say, buckets that are listed in the, I guess, what fleshes out a child with a disability? No. The district's position that it is not the same as the buckets. Because, for instance, back to my example of you can't assess for an emotional disturbance. You can assess for anxiety. You can assess for hyperactivity. You can assess for a whole host of disabilities that the Diagnostic and Statistic Manual, the DSM-5, will look at to determine whether a student has a disability. But there is no test for OHI. And that's because OHI could include things such as a student having diabetes and the student needs some kind of IEP plan to address that. So the student might have a disability, such as anxiety, and that disability is going to fall under the eligibility categories. So suspected disability is absolutely broad, but the district's position is that the eligibility categories are not what we are assessing in. We're assessing for, the school district is assessing for, the suspected disabilities. And I guess that's why I'm sort of fixated on this, because I take from your answer, suspected disability does not equal those categories we're talking about. So how do we define, but suspected disability is what gives rise to the district's responsibility to do an FIE and start the process and et cetera. So how do we define suspected disability? Because I think what Council Opposite is saying is it's much broader. It's akin to those categories, and a district has the obligation to find these things. And there is the child find obligation in IDEA as well. So how does the district put bookends on what a suspected disability is and what's your support for how we should define it? So it's exactly what I said earlier when I was talking about the full and individual evaluation. The school district is going to come in and do just what it did in this case. It's going to assess for all of the different types of areas. Our assessment included, in fact, when you look at the CFR, I believe it's in 300.304 is where the evaluation language is. And it says that the assessments must include health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, motor abilities. And so what the school district did here, which is the appropriate way to handle the FIE and the evaluation, is you go through and you look. We looked at his vision. We looked at his health. We looked at his social and emotional status. That was the emotional and behavioral piece of it. We look at his general intelligence. That was the cognitive piece of it. We look at his academic performance. We look at his communicative status. That was the speech and language communication part. And then from there, the professionals look to see if there are any concerns that are being seen in the school setting that might give rise to a need for some additional assessment to narrow in to see if there is a suspected disability. That falls under the IDEA. And by reason of that disability, the student would need special education or specially designed instruction under the IDEA. And so here, when you look at the BASC-3, which is the behavior assessment scale, it showed that he was within normal limits. The testimony from his kindergarten teacher was that he was a happy student who was well acclimated to the general education classroom. She didn't see any concerns regarding his behavior. He was transitioning without anxiety. And then even when you look at what happened on the very first day of school, while the student's mother had expressed he's got separation anxiety, I'm concerned about this, I'm concerned that I'm going to have to stay with him for a few weeks, by the time that the principal and the counselor found him on that first day to make sure the transition was going well, he was already in the classroom. I'm sorry, it was the diagnostician and the counselor. And he was already in the classroom. He was already situated. He had put his stuff away, and he was already doing his work. There was no need for mom to be in the classroom. So while there was a report of anxiety, it was not being shown in the school setting such that there was a need for specially designed instruction. Let me ask you a little bit different angle perhaps than Judge Wilson is asking about on suspected disability. It seems to me something's got to happen, something's got to be suspected to get a child into this under the Act at all. And whatever that is, that's at least starting the process of what are the disabilities that may be suspected. I wonder if we're not making more out of this insofar as looking for a definition than is necessary. The natural meaning of the words is there is something suspected of concern about this particular child that might fit within the purposes of this statute. You go through the evaluations, which are fairly broad, though maybe not as broad as they need to be, which is counsel's argument, and you find out what you may be from that. What are the overalls? You may expand what your suspicions are, but ultimately come to some evaluation that resolves your suspicions in as good a way as possible. Does there need to be any more meaning in your sense of how this statute works to suspected disabilities than something better expressed than I just did? But something like that? No, that's exactly how it's supposed to work, and I hope that's how I've explained how it's supposed to work because, again, you go through, you look at the broad categories, and then you narrow it down and you drill down as you evaluate the student. But does that, whether it's the behavioral assessment scale or whether it's something else, could it be that there are some disabilities covered by the statute, by the Act, it's more, I guess, the statute, that would not be picked up by that assessment and whatever the other standard assessments are, but that assessment work itself might create some suspicions that would broaden the evaluation? Absolutely, and if that occurred, then what should happen? There would be additional assessments that would be done by the school's multidisciplinary team. If, in the process of doing the evaluation, they saw something else, then that would warrant further evaluation. But here, they didn't see anything that warranted further evaluation. How does the most important expert of all factor into this? The what, I'm sorry? The most important expert of all, Mama. I mean, the parents know the kids better than the school, and so when does parental input give rise to a need for additional evaluation and all that sort of thing? So when Mom reported to the school district about his anxiety and handed the private evaluation, the school district did the full and individual evaluation. But when you look at the prior evaluation from the prior individual that did the private evaluation in February of 2018, you'll see that that individual diagnosed him with anxiety based on parent report. The evaluator actually wasn't seeing that anxiety when she did her private evaluation, and I'm looking for that right now so I can cite you to it. But that wasn't being seen. It was by parental report. And because it was by parental report, what the school district needs to look at, because what the ultimate definition for needing special education or being eligible is that not only do you have a disability, but by reason of that disability, you need specially designed instruction in the school setting. And so what the LSSP saw was she did all of the, and that's the licensed specialist in school psychology. She did all of her administrations, didn't see anything that showed that there was a need for specially designed instruction because of the anxiety. And then she reported that the prior evaluation showed that it was mom that was reporting the anxiety, not that the evaluator was actually seeing it. I didn't realize you had a tablet. I was wondering what you were doing. It's much easier than a folder. And with that, I don't have anything further other than to ask the court to affirm the adoption of the special education hearing officer's decision, which correctly found that the school district's full and individual evaluation was appropriate. Thank you. Thank you, Ms. Walker. Mr. Cuddy, you have five minutes on rebuttal. Just a few points. In the context of suspected disability, this court rendered a decision in Crowett's, which is cited in the briefing, that I believe gives some insight into the meaning of suspected disability in the context of the IDEA. The district relies on a suggestion that the behaviors have to be seen only in the school setting in order for the child to qualify for special education services. I don't believe this is a correct interpretation of the law. If you look at the purpose of the IDEA, the IDEA is supposed to prepare children for independent living, continuing their education, and competitive employment. So to limit a disability issue to only what is seen in the school setting, I think is an error. The district really ---- I'm not following how that works. I guess, tell me if I'm right, you're relying on what the mother was indicating. That may have been arising at home. It wasn't seen at school. Is that what you're talking about, that this evaluation was focused too much on whether those indications arose in the school setting or not, but they should have accepted what the mother was indicating was happening at home? No, many of the behaviors did arise in the school setting. And the district acknowledged that, in a sense, a couple weeks after the IEP meeting, when they had the Section 504 meeting, and they determined that his physical and mental impairment substantially limited his major life activities, including learning, social engagement, and caring for himself. Just page 6 of our initial papers. So it's not that the district wasn't seeing these. It's that the district wasn't seeing the significance of these and the impact on the student in the educational setting. In the context of the classification, the IDEA classification of emotional disturbance, we have to recognize that emotional disturbances have a very broad spectrum of emotional disturbances. You have obsessive-compulsive disorders. You have attention deficit disorders. You have autism spectrum disorders, all which are in the DSM-5 and have some clear medical or psychological diagnosis that applies. But in the IDEA context, they fit within the classification of an emotional disturbance, typically. And the district was seeing symptoms of some sort of disorder. They limited their investigation to the disorder of autism. Is that really a fair statement? And what do you say in response to what we were talking about with your friend on the other side? I mean, if they did, then I think that's probably a problem. But is that really what the record shows, that they only looked at autism? I believe they looked at autism, and I think there's some evidence they looked at a learning disability. But as my learned counsel was pointing out, they relied largely on the BASC and the CARS, and there's some dispute about the CARS and the ADOS. But these are survey forms that are filled out by someone that then a psychologist would look at. They didn't go beyond that. Are they inadequate? What's that? I mean, are they inadequate? What's your support for those surveys being inadequate? They're inadequate in the context of identifying a disability that might need further investigation, such as ADD or oppositional defiant disorder. And these things aren't going to be identified because a school psychologist is not going to identify and diagnose a student with those behaviors. That investigation takes a further licensed professional in order to diagnose those disabilities. Is your argument, I mean, you may have the broad enough understanding of it to be able to answer this. Is your argument basically that what generally happens in this process is not sufficient? It's not what Northwestern Independent School District does. But maybe I'm wrong, but from the cases I've had before, it seems to me the description from the other side is basically the usual approach with these kinds of evaluations. And I'm hearing from you that these sort of rote use of forms, too coarse a way to put it, but going through that way is insufficient under the IDEA, and I don't know if that's the way we have evaluated it before. I'm at the end of my time, but I'd like to answer a question. You may have the time to answer the question. The IDEA is individualized to the student. And in this case, the evaluations were insufficient to identify the student's disability and needs. Would you accept that what occurred here is more or less within, stayed in the lane of how these are usually done, but there's something different about the issues regarding your client's child that require a different approach? I would not accept that, Your Honor. And the reason I will not accept it is because as a result of this, and as a result of this student not getting what he needed in this district, the parent was forced to pick up and move to another district where now the student is classified, now the student is receiving aid services, now the student is receiving special education services, now the student has a behavioral plan, now the student has an aide to help him with his behaviors. So this other school district complied with the law. What we didn't have here is this school district complying with the law. And it doesn't just, and I hate being here over a $3,000 evaluation, but it doesn't just impact on this student. It impacts on every student when an IEP team operates in this manner and doesn't take its job seriously and thoroughly investigate the child in all areas of suspected disability. Thank you, Your Honor.